## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

On November 5, 2017, in Mount Airy, Maryland, the Defendant, **MICHAEL LEE KING** ("**KING**"), intentionally and knowingly distributed to Victim A (i) a quantity of a mixture and substance containing a detectable amount of both heroin and fentanyl, and (ii) a quantity of a mixture and substance containing a detectable amount of cocaine base (collectively, the "controlled substances"). Victim A's death resulted from the use of the controlled substances.

Shortly after 12:00 a.m. on November 5, 2017, Victim A traveled to **KING**'s residence in Mount Airy, Maryland, to purchase drugs from **KING**. Between approximately 11:37 p.m. on November 4, 2017, and approximately 12:32 a.m. on November 5, 2017, **KING** and Victim A communicated through telephone calls and text messages. Victim A sent a text message to **KING** at approximately 12:24 a.m. regarding Victim A's anticipated arrival at **KING**'s residence three minutes later. Upon arriving at the residence, Victim A paid **KING** in exchange for the controlled substances.

After purchasing the controlled substances from **KING**, Victim A returned to Victim A's residence in Mount Airy, Maryland. Victim A then ingested the controlled substances distributed by **KING**. At approximately 8:30 a.m. on November 5, 2017, an individual at Victim A's home called 911 to report that the individual thought Victim A had died of a drug overdose. Emergency medical services responded and declared Victim A dead at 9:07 a.m. The Office of the Chief Medical Examiner for the State of Maryland subsequently determined that the cause of Victim A's death was narcotic (heroin and fentanyl) and cocaine intoxication. But for the use of the controlled substances **KING** distributed to Victim A, Victim A would not have died.

On or about November 29, 2017, law enforcement executed a search warrant at **KING**'s residence in Mount Airy, Maryland. From the residence, law enforcement recovered drugs and drug paraphernalia belonging to **KING**, including: (a) approximately 2.233 grams of substances containing detectable amounts of heroin and fentanyl, and (b) approximately 0.282 grams of a substance containing a detectable amount of cocaine. At the time of the search, after **KING** was advised of, and waived, his *Miranda* rights, officers interviewed **KING**. **KING** initially denied selling Victim A any "dope." Later in the interview, however, **KING** told officers that he last spoke with Victim A on the night Victim A died, when Victim A came over to "get some hard," referring to crack cocaine. **KING** ultimately admitted that, on the night of Victim A's death, **KING** sold Victim A $70 worth of "hard" (crack cocaine) and 0.2 grams of "boy" (heroin) for $20.

Rev. August 2018

9

SO STIPULATED:

_____
Jessica C. Collins
Kelly O. Hayes
Assistant United States Attorneys

_____
Michael Lee King
Defendant

_____
Douglas Miller, Esq.
Counsel for Defendant